## HABEAS CORPUS FOR RELEASE OF CRABBE ACT OFFENDERS.

Probate Court of Montgomery County.

IN RE THOMAS CANFIELD, SR., AND WILLIAM DUCKETT.

Decided, March 29, 1927.

*Disqualification of Mayors and Magistrates in Liquor Cases—Is Sweeping and Complete—Entire Jurisdiction Affected—Proceedings void ab initio—Habeas Corpus at once Available to those Convicted.*

The disqualification of mayors and magistrates to sit in liquor cases by reason of their financial interest in the outcome, affects the right of such mayors and magistrates to entertain jurisdiction in such cases. Therefore the assumption of jurisdiction by them renders all such proceedings void *ab initio* and relief can be obtained not only by proceeding in error but by resort to habeas corpus.

ROUTZOHN, J.

Relator, Thomas Canfield, Sr., was committed to the workhouse of the city of Dayton by the mayor of the village of Alger, Hardin county, Ohio, for non-payment of a fine of one thousand dollars and costs, imposed by said mayor for the violation of the Prohibition law of Ohio.

Relator, William Duckett, was committed to the Montgomery county jail for a like violation, the sentence being one hundred dollars and costs, imposed by S. B. Weeks, a justice of the peace in and for Harrison township, Montgomery county, Ohio.

Both contend they are unlawfully restrained of their liberty, and are enitled to release by virtue of the recent decision of the Supreme Court of the United States in the case of *Tumey* v. *State of Ohio*.

Tumey was tried, convicted and sentenced by the mayor of North College Hill, Hamilton county, Ohio, for the violation of the Prohibition law, a motion having been made at the trial to dismiss because of the disqualification of the mayor to try defendant under the Fourteenth Amendment to the Constitution of the United States which,

in part, declares: "Nor shall any state deprive any person of life, liberty, or property, without due process of law." Error was then prosecuted to the Common Pleas Court of Hamilton county which held the conviction of Tumey null and void and dismissed the defendant on the ground that the mayor was disqualified as claimed in the motion to dismiss. To reverse this latter ruling error was prosecuted through the appellate courts of the state to the Supreme Court of the United States where final decision was rendered.

The Supreme Court of the United States in sustaining the decision of the Common Pleas Court of Hamilton county, holding that Tumey was deprived of his constitutional right to "due process of law", based the decision on the fact that the mayor had a direct pecuniary interest in the result of the trial by reason of his right to retain his fees out of the costs assessed upon conviction, and the additional reason that as chief executive officer of the village he would be interested in its financial condition to the extent that he would have a "strong motive to help his village by conviction and a heavy fine."

No unprejudiced person will question this sound reasoning, and all officers of the law, judicial and administrative, are bound by the effect and authority of this decision of our highest judicial tribunal.

Canfield was sentenced by the mayor of Alger, who conducted a "liquor court" as did the mayor of North College Hill, and Duckett was sentenced by a justice of the peace whose fees depended upon conviction.

True, justices of the peace are entitled to costs not to exceed one hundred dollars per year in prosecutions where no conviction is had, but the controling inducement is to convict. Also, while a justice of the peace does not act in the dual capacity of magistrate and executive, as does the mayor of a village, it is a matter of common knowledge that certain townships have derived enormous revenues from fines assessed by their "squires" who energetically conducted "liquor courts".

There is, therefore, no denial that were relators, in the instant cases, proceeding by writs of error to reverse the judgments against them, they would be entitled to the same relief as that accorded Tumey.

The sole question for this court to determine is whether they are entitled to release on habeas corpus.

Section 12165 of the General Code of Ohio provides:

"If it appears that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of a judgment of a court of record, and that the court or magistrate has jurisdition to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order."

In connection with this statute the courts of Ohio have with but one exception held that jurisdictional questions must be presented in the trial court, and proceedings to reverse prosecuted by writ of error to an appellate court.

See *Ex Parte Shaw,* 7 Ohio State 81; *Dillon v. State,* 38 Ohio State 586; *Ex Parte Van Hagan,* 25 Ohio State 427; *In Re Harry Allen,* 91 Ohio St., 315; *In Re Shooler,* 7 Nisi Prius N. S. 276; *Hamilton v. State,* 78 Ohio State 76; *In Re Carrie McAdams,* 21 Circuit Court, 450.

Exception: *In Re Moore,* 14 Circuit Court, 237.

All of these authorities were discussed and, with the exception, followed by this court in *Folkerth ex rel Akers v. Neutzenholzer.*

The latest decision is that of *Yutze v. Copeland,* 109 Ohio State 171, in which our Supreme Court held:

"A writ of habeas corpus will not lie *to test the constitutionality of a statute or ordinance,* in favor of one who has been convicted, where the criminal court wherein conviction was obtained had jurisdiction or power to determine the question of constitutionality. In such case the writ cannot be made a substitute for proceedings in error."

In this case relator sought release from a sentence by

the municipal court of Cincinnati by raising the question of the constitutionality of a city ordinance, the Supreme Court holding that the municipal court had jurisdiction in the first instance to determine the question.

In the opinion, Jones, J., in rendering the opinion of the Supreme Court, acknowledged that the Ohio rule was contrary to the weight of authority as contained in other state jurisdictions, but states:—

"Under the modern trend of authority, the courts holding otherwise, including as we think, the Supreme Court of the United States, now rest their decision upon the well-known rule that habeas corpus is not the proper remedy to review errors, either of fact or law, that may occur in the trial of a criminal case: that, jurisdiction having been conferred, a criminal court is empowered to determine in the first instance the question whether a statute or ordinance, as the case may be, is violative of our organic laws, and that if any error intervenes in the decision of the trial court the defendant has a right of review in the appellate courts, where the question of unconstitutionality may again be passed upon and determined. It would seem that this is the sensible view. Otherwise an offender might keep the card of unconstitutionality up his sleeve and later play it by invoking the writ of habeas corpus."

"Stripped to its bare bones the real question is:— What is meant by the word 'jurisdiction'? The proponents of the argument favoring invocation of the writ argue that the court is not clothed with jurisdiction if the statute is unconstitutional. But it seems to us that they overlook the usual and ordinary meaning of the term. 'Jurisdiction' is defined as the power to hear and determine the law question as to whether the statute or the ordinance is constitutional or otherwise."

Again on page 181 of the opinion, Jones, J. states:—

"It will therefore be seen from an examination of the federal authorities that they hold that the trial court has jurisdiction to hear and determine the legal question whether a statute under which the prosecution based is constitutional or otherwise, and that on such grounds habeas corpus is not the proper remedy, *except under peculiar and exceptional circumstances*, to obtain the release of one who has been convicted."

The syllabus and parts of the opinion in the Yutze case are quoted for the reason that it is relied upon as decisive of the claim of relators, and because Judge P. J. Burrows of the Common Pleas Court of Ross county has denied a writ by virtue of its authority.

An analysis of the *Yutze* v. *Copeland* case discloses quite a distinction between it and that of relators.

Yutze by habeas corpus attempted *"to test the consti- tutionality"* of the ordinance under which he was convicted. The court which tried him had jurisdiction over the sub- ject matter and the person, with *"power to hear and de- termine the law question as to whether the ordinance was constitutional or otherwise."*

Relators in the present instance are not seeking *"to test the constitutionality"* of the statute under which they were convicted.

Their claim is that the mayor and magistrate, respect- ively, by whom they were convicted, were disqualified to act as judges by virtue of the decision of the Supreme Court of the United States, the effect of which disqualifies all mayors and magistrates having a pecuniary interest as hereinbefore mentioned. This disqualification emphatically denies jurisdiction to all courts pecuniarily interested as defined in the Tumey case. It holds that the assumption of jurisdiction by such a mayor or magistrate is a denial to the defendant of his constitutional right to "due process of law." This affects the entire jurisdiction of the mayor or magistrate of the subject matter and the person. If such a court, therefore, had no jurisdiction to convict and sentence a defendant charged with a criminal offense, it had no jurisdiction in the first instance to pass upon any question whether constitutional or otherwise. Nor would it make any difference if the defendant plead guilty. A plea of guilty is not a waiver of a constitutional right, whether that right be the right of trial by jury or the right to "due process of law".

The Supreme Court of Ohio in *Yutze* v. *Copeland, supra,* in the opinion, cites *Ex Parte Shaw,* 7 Ohio State, page 81, wherein Swan, J. on pages 82 and 83 says:—

"But if the court has sentenced the relator for an offense over which, by law, it had no jurisdiction whatever, so that the proceedings and sentence were manifestly *coram non judice*, and void, the imprisonment following such void sentence would have been unlawful, and the relator entitled to be discharged on habeas corpus."

Judge Struble in the Tumey case, 25 Ohio Nisi Prius, (N. S.) 580, held the proceedings of the mayor in that case to be "null and void". If void, it was void *ab initio*. The Supreme Court of the United States sustained his finding, and on the last page of the decision Chief Justice Taft in pointing to the right of the state to distribute fines and stimulate prosecutions by offering rewards, etc., states:—

"But these principles do not at all affect the question whether the state, by the operation of the statutes we have considered, has not vested the judicial power in one who by reason of his interest both as an individual and as chief executive of the village, *is disqualified to exercise it in the trial of the defendant.*"

This disqualification and consequent lack of jurisdiction affects not only the jurisdiction of mayors and magistrates under the Prohibition law but all prosecutions for misdemeanors, wherein they are specifically granted final jurisdiction by statute of offenses against the state. Many persons are now serving sentences thereunder.

Assuming for the sake of argument that the foregoing reasoning and conclusions are erroneous, and that defendants should have raised, and in the future must raise, the question of the court's right to hear and determine the cause during the trial in order to safe-guard their constitutional rights, does not the decision of the Supreme Court in *Yutze* v. *Copeland, supra,* offer release to committed relators?

In the opinion it is twice suggested that release by habeas corpus may be granted "under peculiar and exceptional circumstances" even where habeas corpus is not the proper remedy.

It cannot be denied that relators in the instant cases were deprived of their liberty without due process of law as was Tumey. Tumey was released evidently because he had the financial ability and capable legal talent to prosecute error to the Common Pleas Court, Supreme Court of Ohio, and the Supreme Court of the United States. These relators were not so fortunate.

If it should be determined that a constitutional right must be asserted at the trial before a mayor or magistrate, attended by expense of employing counsel and prosecuting error to a court of appellate jurisdiction, nothing can prevent "interested" mayors and magistrates from continuing to assume jurisdiction and obtaining their coveted fees from all those who are ignorant of their legal rights or financially unable to assert them.

The poor, friendless and indigent are entitled to more consideration than the wealthy or better circumstanced for the former's liberty is at stake while the latter can avoid imprisonment by paying the fine and costs.

This is merely a suggestion that the present circumstances and conditions in Ohio are sufficiently "peculiar and exceptional" to warrant the use of the writ of habeas corpus which was created originally to save the people from the injustice of arbitrary and tyranical power.

Relators are released.